# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT,<br><br>Plaintiff,<br><br>v.<br><br>MCAFEE CORP., JON WINKELRIED, KATHY WILLARD, JEFF WOOLARD, TIM MILLIKIN, SOHAIB ABBASI, PETER LEAV, MARY CRANSTON, GUNTHER BRIGHT, and EMILY ROLLINS,<br><br>Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Michael Kent ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against McAfee Corp. ("McAfee" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which an investor group led by Advent International Corporation ("Advent"), Permira Advisers LLC ("Permira"), Crosspoint Capital Partners ("Crosspoint Capital"), Canada Pension Plan Investment Board ("CPP Investments"), GIC Private Limited ("GIC"), and a wholly owned subsidiary of the Abu Dhabi Investment Authority ("ADIA") (collectively, "the Investor Group") will acquire the Company through their affiliates Condor BidCo, Inc. ("Parent")

and Condor Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

2. On November 8, 2021, McAfee announced its entry into an Agreement and Plan of Merger dated November 5, 2021 to be acquired by the Investor Group (the "Merger Agreement"). That agreement provides McAfee stockholders will receive $26.00 for each share of Company common stock they own (the "Merger Consideration").[2]

3. On January 4, 2022, McAfee filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that McAfee stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[1] Non-parties Advent, Permira and Crosspoint Capital are private equity investors. Non-party CPP Investments is a professional investment management organization that manages the fund in the best interest of the more than 20 million contributors and beneficiaries of the Canada Pension Plan. Non-party GIC is wholly owned by the Government of Singapore and was set up with the sole purpose of managing Singapore's foreign reserves. Non-party ADIA is a globally-diversified investment institution that invests funds on behalf of the Government of Abu Dhabi. Non-party Parent is a Delaware corporation affiliated with Advent and Permira. Non-party Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

[2] The approximate equity value of the Proposed Transaction is $12 billion.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of McAfee.

10. Defendant McAfee is a Delaware corporation with its principal executive offices located at 6220 America Center Drive, San Jose, California 95002. McAfee's common stock trades on the Nasdaq Global Select Market under the ticker symbol "MCFE."

11. Defendant Jon Winkelried ("Winkelried") his and has been a director of the Company since January 2018.

12. Defendant Kathy Willard ("Willard") his and has been a director of the Company since November 2019.

13. Defendant Jeff Woolard ("Woolard") his and has been a director of the Company since August 2019.

14. Defendant Tim Millikin ("Millikin") his and has been a director of the Company since April 2017.

15. Defendant Sohaib Abbasi ("Abbasi") his and has been a director of the Company since November 2018.

16. Defendant Peter Leav ("Leav") has been President, Chief Executive Officer ("CEO"), and a director of the Company since February 2020.

17. Defendant Mary Cranston ("Cranston") his and has been a director of the Company since November 2018.

18. Defendant Gunther Bright ("Bright") his and has been a director of the Company since September 14, 2021.

19. Defendant Emily Rollins ("Rollins") his and has been a director of the Company since October 5, 2021.

20. Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21. On November 8, 2021, McAfee announced in relevant part:

San JOSE, Calif.--- McAfee Corp. (NASDAQ:MCFE, "McAfee"), a global leader in online protection, today announced it has entered into a definitive agreement to be acquired by an investor group led by Advent International Corporation ("Advent") and Permira Advisers LLC ("Permira"), Crosspoint Capital Partners ("Crosspoint Capital"), Canada Pension Plan Investment Board ("CPP Investments"), GIC Private Limited ("GIC"), and a wholly owned subsidiary of the Abu Dhabi Investment Authority ("ADIA") (collectively, "the Investor Group").

As part of the transaction, the Investor Group will acquire all outstanding shares of McAfee common stock for $26.00 per share in an all-cash transaction valued at approximately $12 billion on an equity value basis, and over $14 billion on an enterprise value basis after giving effect to repayment of McAfee debt. The purchase price represents a premium of approximately 22.6% over McAfee's closing share price of $21.21 on November 4, 2021, the last trading day prior to media reports regarding a potential sale of McAfee.

Upon completion of the transaction, the Investor Group will take ownership of McAfee. As a privately held company, McAfee will continue building on its success and proven track record of growth as a pure-play consumer cybersecurity leader following the sale of McAfee's Enterprise business, and the associated one-time dividend of $4.50 per share, to private equity firm Symphony Technology Group for $4.0 billion, which closed on July 27, 2021.

"This transaction is a testament to McAfee's market-leading online protection solutions, our talented employees, and outstanding customers and partners," said McAfee President and Chief Executive Officer, Peter Leav. "We want to thank our employees for their continued hard work and commitment to McAfee. We are thrilled to be partnering with premier firms who truly understand the cybersecurity landscape and have a proven track record of success."

In 2017, TPG partnered with Intel to carve out McAfee from Intel's core operations to establish a pure-play cybersecurity company with access to significant capital, operational and technology resources. McAfee completed its initial public offering last year, with TPG and Intel remaining as shareholders in the company.

Jon Winkelried, Chief Executive Officer of TPG and Chair of the McAfee Board, commented: "Today's announcement signals continued growth and opportunity for McAfee. Over the last four years, the company has expanded its product portfolio, enhanced its go-to-market strategy, and pursued strategic M&A, including the divestiture of its enterprise business. We're proud that today McAfee is a leading consumer cybersecurity franchise, protecting the digital lives of 20 million subscribers across the globe."

Tim Millikin, Partner at TPG and McAfee Board member, added: "It's been a privilege to have partnered with McAfee and its leadership team to help navigate the company's transformation and growth over the last four years. Our partnership with McAfee reflects TPG's focus on investing in growth to build companies that are driving differentiated value in their markets."

"McAfee is one of the most trusted brands in the essential business of consumer digital protection," said Bryan Taylor, Head of Advent's Technology Investment Team and a Managing Partner in Palo Alto. "As consumers face new and complex cyber risks, we see tremendous opportunity to build on McAfee's differentiated technology platform to continue delivering innovative solutions that can protect all facets of the digital lives of people around the world. We look forward to working alongside our investment partners and the talented McAfee team to continue setting the bar for consumer digital protection."

Brian Ruder, Co-Head of Technology at Permira, commented: "The need for personalized, innovative, and intuitive online protection services has never been greater. McAfee boasts an enviable brand, extensive partner ecosystem, loyal customer base and a rigorous commitment to product development. With our extensive experience in scaling global consumer technology and cybersecurity

businesses, we are excited to work closely with McAfee and our fellow investors to help position the company for even greater heights."

Greg Clark, Managing Partner at Crosspoint Capital and former Chief Executive Officer of Symantec added: "The risks that consumers face from all aspects of their digital lives is immense, and these risks are unprecedented and rapidly increasing. Consumers buy from brands they trust, and with the globally recognized brand of McAfee, we see the long term opportunity to deliver products and services to address these risks in all aspects of their digital presence."

Collectively, the Investor Group will provide McAfee with both financial and operational resources to further enhance its consumer offering and capture the rapid growth in consumer demand for digital protection services. McAfee's strong brand awareness, diversified distribution model and customer-centric approach has made it a clear leader in the rapidly evolving consumer online protection space. The Investor Group will support McAfee as it continues to broaden its differentiated online protection solutions and drive long-term value through market expansion.

**Transaction Details**

Under the terms of the agreement, which has been approved by the McAfee Board of Directors, McAfee shareholders will receive $26.00 in cash for each share of common stock they own.

The transaction is expected to close in the first half of 2022, subject to customary closing conditions, including, among others, approval by McAfee shareholders, receipt of regulatory approvals, and clearance by the Committee on Foreign Investment in the United States. Intel Americas, Inc. and certain funds affiliated with TPG Global, LLC have entered into a voting agreement pursuant to which they have agreed, among other things, to vote their shares of company stock in favor of the transaction, subject to certain conditions. The voting support under the voting agreement ceases automatically if the merger agreement is terminated or if the McAfee board makes an adverse recommendation change. These stockholders currently represent approximately 67.9% of the current outstanding voting power of the McAfee common stock.

Consistent with the McAfee Board's commitment to maximizing stockholder value, under the terms of the definitive merger agreement, McAfee's Board and advisors may actively initiate, solicit and consider alternative acquisition proposals during a 45-day "go shop" period. McAfee has the right to terminate the merger agreement to accept a superior proposal during the go-shop period, subject to the terms and conditions of the merger agreement. There can be no assurances that this process will result in a superior proposal, and McAfee does not intend to disclose developments with respect to this solicitation process unless and until McAfee's Board makes a determination requiring further disclosure.

The buyer entity in the merger, Condor BidCo, Inc. ("Parent"), has obtained equity financing and debt financing commitments for the purpose of financing the transactions contemplated by the merger agreement. Funds advised by the Investor Group have committed to capitalize Parent at the closing of the merger with an aggregate equity contribution equal to $5.2 billion on the terms and subject to the conditions set forth in signed equity commitment letters.

The Investor Group has obtained a commitment from JPMorgan Chase Bank, N.A., Bank of America, N.A., Credit Suisse AG, Cayman Islands Branch, Barclays Bank PLC, Citibank, N.A. (and/or its affiliates), HSBC Bank USA, National Association, Royal Bank of Canada, CPPIB Credit Investments III Inc., UBS AG, Stamford Branch and PSP Investments Credit II USA LLC to provide debt financing consisting of a $6.66 billion first lien term loan facility, a $1 billion first lien cash flow revolving facility and a $2.32 billion senior unsecured bridge facility (which may be replaced with senior notes issued through a Rule 144A or other private placement), subject, in each case, to customary conditions. PSP Investments Credit USA LLC and investment funds managed by Neuberger Berman have agreed to provide the Investor Group with preferred equity financing with an aggregate liquidation preference of up to $800 million, subject to customary conditions.

Upon completion of the transaction, McAfee common stock will no longer be listed on any public securities exchange.

**Third Quarter Earnings Conference Call Update**

Separately, McAfee will announce today its third quarter financial results, which will be available on the "Investor Relations" section of the McAfee website. In light of the announced transaction with the Investor Group, McAfee has cancelled the earnings call previously scheduled for Tuesday, November 9, 2021.

**Advisors**

Goldman Sachs & Co. LLC and Morgan Stanley & Co. LLC are serving as financial advisors to McAfee and Ropes & Gray and Moulton Moore Stella are serving as legal counsel. JP Morgan Securities LLC, BofA Securities, Inc., Barclays Capital Inc. and Citigroup Global Markets Inc. are serving as financial advisors, with Bryant Stibel Group serving as strategic operating advisors to the Investor Group. Fried, Frank, Harris, Shriver & Jacobson are acting as M&A legal counsel and Kirkland & Ellis are acting as Finance legal counsel to the Investor Group.

The debt financing for the transaction is being provided by JPMorgan Chase Bank, N.A., Bank of America, N.A., BofA Securities, Inc., Credit Suisse AG, Cayman Islands Branch, Credit Suisse Loan Funding LLC, Barclays Bank PLC, Citigroup Global Markets Inc., HSBC Securities (USA) Inc., HSBC Bank USA, National Association, Royal Bank of Canada, RBC Capital Markets LLC, CPPIB Credit Investments III Inc., UBS AG, Stamford Branch, UBS Securities LLC and PSP Investments Credit II USA LLC, and the preferred equity financing is being arranged

and provided by PSP Investments Credit USA LLC and investment funds managed by Neuberger Berman.

**The Proxy Statement Contains Material Misstatements or Omissions**

22. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to McAfee's stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

23. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's financial projections and the valuation analyses underlying the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman Sachs").

*Material Omissions Concerning the Company's Financial Forecasts and the Financial Analyses Relied on by the Board*

24. The Proxy Statement omits material information regarding the financial forecasts for the Company, including the line items underlying its projections for (a) Net revenue; (b) Gross Margin; (c) Adjusted EBITDA; and (d) Unlevered Free Cash Flow.

25. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Goldman.

26. The Proxy Statement describes the Goldman fairness opinion and the various underlying valuation analyses. Those descriptions, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding Goldman's work. As a result, McAfee stockholders cannot assess what significance to place on Goldman's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

27. With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the terminal year estimate of the free cash flow to be generated by McAfee; (b) the terminal values; (c) the inputs and assumptions underlying the range discount rates Goldman utilized in connection with the analysis; (d) McAfee's net debt as of September 25, 2021; and (e) the fully diluted outstanding shares of McAfee utilized in the analysis.

28. With respect to Goldman Sachs's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (a) McAfee's forecasted net debt as of December 31, 2021 to 2023; (b) the inputs and assumptions underlying the range discount rates Goldman utilized in connection with the analysis; (c) the number of projected year-end fully diluted shares of Company stock for each of the years 2021 to 2023; and (d) the forecasted dividends through each of the years 2021 to 2023.

29. The omission of this material information renders the statements in the "Certain Projected Financial Information" and "Opinion of Goldman Sachs & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act. Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

30. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other McAfee stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

31.     Plaintiff repeats all previous allegations as if set forth in full.

32.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

33.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

35.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

36.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

37. Plaintiff repeats all previous allegations as if set forth in full.

38. The Individual Defendants acted as controlling persons of McAfee within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of McAfee, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

41. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, McAfee's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of McAfee, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to McAfee stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 26, 2022 **LONG LAW, LLC**

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*